The Chancellor.
The difference between fungibles, or things loaned to be returned in kind, and things which are loaned to be'returned in the same articles specifically, does not arise for consideration in this case. There is no doubt that, upon an ordinary loan of 100 shares of the stock of a particular corporation, or of other stock of the like nature, where one share of the stock is just as good as another, it would only be necessary to return the same amount of stock in kind. The loan in such a case is in substance a sale, to be repaid in kind and quantity, and the title to the fungibles loaned is immediately transferred to the borrower; whereas upon the loan of specific articles to be returned in specie, the title remains in the lender, and the borrower is only entitled to the temporary use thereof. (3 Ersk. Inst. tit. 1, § 18.)
But fungibles, or such articles as are capable of being estimated generally by weight, number or measure, do not, when deposited as a pledge, become the property of the pledgee, as they do upon a loan of them. For the pledge is not for use, but merely as a security. If the pledgee, therefore, sells the pledge without authority, it is a violation of his trust, although he afterwards purchases other articles of the same kind and value, to *499 be returned to the pledgor unless there is some agreement, either express or implied, between the parties, that he shall be permitted to do so. Such is the effect of the decision of Chancellor Kent in the case of Nourse v. Prime, (4 John. Ch. Rep. 490.) For there, the whole number of shares of stock deposited with the defendants remained standing in their names and under their control, until they were sold under the authority and pursuant to the directions of the contract. In the case under consideration, there was no express agreement that the pledgees should be permitted to sell the stock before the note became payable. And the express contract contained in the note itself, that they should be at liberty to sell the stock after a certain specified time, and in a particular manner, precluded the idea of any implied authority to sell before the note became due, or at any other place than at the board of brokers.
The judge also properly rejected the evidence offered to prove a custom of the brokers in Wall-street in opposition to the general law of the state ; and which custom was wholly inconsistent with the written contract between these parties. In the case of Le Croy v. Eastman, (10 Modern Rep. 499,) relative to the South-Sea stock, the trustee had mortgaged the trust funds. But as the cestui que trust had not been injured thereby, and the trustee had not received the benefit of a sale of the stock before the bubble burst, the court very properly refused to charge the latter with a mere fictitious value of a worthless stock. It is evident, however, from the language of the court in that case, that if the trustee had in fact sold the stock while it was worth in the market six hundred per cent, and had received that amount upon the sale, he would have been compelled to account for the same to the cestui que trust.
The authority to sell the stock in question at the board of brokers, for the payment of the debt, if such debt was not paid when it became due, did not authorize the pledgees, even if they had retained the stock in their own hands, to put the same up secretly. But they should have put up the stock openly, and -ofiered it for sale to the highest bidder, at the board of brokers; stating that it was stock which had been pledged for the secu *500 rity of this debt, and with authority to sell it at the board of brokers if the debt was not paid. In this way only the stock would be likely to bring its fair market value at the time it was offered for sale. And in this way alone could it be known that it was honestly and fairly sold, and that it was not purchased in for the benefit of the pledgees by some secret understanding between them and the purchasers. It is a well known fact that shares of stock are constantly sold at the board of brokers, which shares exist only in the imagination of the nominal buyers and sellers. Such sales, as every body knows, are not legally binding upon either party. When a real sale, therefore, is to be made at the board of brokers, of shares of stock which have an actual existence, and which have been pledged for the payment of a debt, with authority to sell them at that board, the stock should be specifically described at the time of such sale, as so many shares standing in the name of the pledgee and sold on account of the pledgor; so that if a full price is obtained for it on such sale, the pledgor of the stock may know that he is entitled to the benefit of the sale. For without such specification, the sale, if an advantageous one, may be put down as a sale of stocks of the pledgee, and which have been sold on his own account.' Secret sales, therefore, cannot be sustained under such an agreement or authority.
I think there was no error in the decisions of the judge at the circuit upon any of the questions raised there, The judgment of the supreme court should -therefore be affirmed.
Wright, Senator.
This is to my mind a very plain case. Allen was the owner of two hundred and fifty shares of the stock of the North American Trust and Banking Company. He made Hallett his agent to procure a loan upon a pledge of this stock. Hallett negotiated a loan with the plaintiffs in error," and they advanced to him $21,000, and took from him a note or contract to pay the money in sixty days, with interest at seven per cent. In the note or contract it is stated that Hallett has deposited with them the stock as collateral security, with authority tó sell the same on the non-performance of his promise *501 to pay the money loaned. The case shows that, during the running of this note, the plaintiffs in error had not under their control, as owners, two hundred shares of this stock; and the question is, whether they are liable to Allen for a breach of trust in parting with his stock before the expiration of the time of payment mentioned in the note.
Even had there been no written agreement in this case, and the stock had been pledged for repayment of the moneys advanced, the plaintiffs could not have sold or parted with it absolutely until the time for redemption expired, and then only by a judicial sale. The pledgor of property has no authority to sell the pledge, until there is a forfeiture; (4 Kent's Com. 138;) although he may assign it, and the assignee will take subject to all the responsibilities of. the pledgee. (2 Kent's Com. 579.) But here is a written agreement, which as I, read it expressly prohibits the sale of this stock before the time limited for the payment of the money. ' And I know of no rule of law which will confer upon a stock broker in Wall-street any greater authority over a pledge, than is given by law to a pledgee of property elsewhere. If this had been a pledge of a valuable diamond, instead of stock, under a written contract not to sell the thing pledged until there was a failure to pay the loan obtained upon it, I doubt whether the plaintiffs in error would have interposed a defence to a suit for an alleged sale before the expiration of the time ior redemption.
But it was insisted upon the argument that the usage of stock jobbers in Wall-street, to hypothecate or repledge stock taken by them upon a loan, formed a part of the contract in question, and an authority for the course pursued by the plaintiffs in error. It is a sufficient answer to this to say, that no such authority is reserved'in the written contract; and to allow the usages of Wall-street to control the general law in relation to any matter, might result in the establishment of principles not always in accordance with sound morals. I prefer that legal principles should have a universal application, and that contracts should receive the same interpretation in the thronged *502 and busy mart of our commercial metropolis that they do elsewhere.
I do not deem it necessary in the decision of this cause to go into an elaborate examination of the abstruse and technical reasoning to be found in the Scotch law books, referred to upon the argument, relating to the doctrine of /tingibles. Suffice it to say, that the doctrine has reference to the loan of things which are to be used, as money, corn, wine, &c., and hence a disposition of them by the pledgee is not inconsistent with the contract of loan. A loan of money, corn or wine, presupposes that the article loaned will be used, and a return made, not of the article itself, but in kind. In the case of the stock parted with by Allen, to secure the money advanced upon it, there is nothing resembling a loan. It is strictly a pledge of the stock; and hence all the learning in relation to the doctrine of /tingibles is inapplicable.
I am entirely satisfied with the decision of the supreme court, and shall vote for an affirmance of the judgment.
Senator Scott delivered an opinion in favor of reversing the judgment' of the supreme court. And
On the question being put, “ Shall this judgment.be reversed f all the members of the court, eighteen in number, voted for affirmance, except Senator Scott.
Judgment affirmed.